I'm Judge Keenan and Judge Nguyen and Judge Richardson. We're all glad to hear your case, so, Mr. Aguilar, will you proceed first, sir? Yes, Your Honor. I'm Daniel Aguilar. I'm the Commissioner of Social Security. Plaintiffs never raised an appointments clause challenge at any point during their administrative proceedings. Instead, they raised that claim for the first time in district court. Under longstanding principles of administrative law, courts do not consider claims that were not raised below, particularly when the agency had the power to address the claim and provide a remedy. That rule applies to SSA proceedings, and it applies to appointments clause claims. The district courts erred in reaching a contrary conclusion, and this court should reverse. I'd like to begin with the background rule that the Supreme Court announced almost 70 years ago in L.A. Tucker, which is that orderly procedure and good governance dictate that claims that were not raised during an agency's proceedings should not be the basis for judicial overturning of those proceedings because the agency never had an opportunity to correct the error in the first place. I want you to go more to the heart of what's going on here. Social Security cases are somewhat different. Typically, the pros say, as I recall, it's been over 30 years since I last did one myself, but you don't have to be an attorney to even represent folks before them. Basically, they're non-adversarial, and that sort of sets these kind of cases apart from some of the other cases that the court has addressed. Don't you agree? Certainly, they're non-adversarial, but I'd point out that both plaintiffs here were represented by counsel at their ALJ proceedings, so that's attorneys who were representing them at that time. Unfortunately, it doesn't just apply just to these ones who are in fact represented. It would apply to anyone who would come up, so any pronouncement we make here today would essentially say, you've got to have brought this up before the ALJ in order to be able to bring it up later, and yet these cases are non-adversarial, typically pros say. Wouldn't you say that puts us in a different posture than the other cases out there? No, Your Honor, I wouldn't, both because the proper rule is issue exhaustion in all SSA proceedings, and to the extent that you are concerned about the potential impact on pro se claimants in SSA proceedings, you can do what the Ninth Circuit did in its Shahebi decision, which was to say that our rule here is for counseled claimants in these proceedings, and when we encounter a case that has pro se claimant, we'll decide that case on those basises and the particular claims that are at issue here. So I don't think that you should be letting the fact that other plaintiffs who aren't in these cases might have been unrepresented at SSA proceedings dictate the outcome in these cases. I mean, the fact that the SSA proceedings are non-adversarial was something that the Supreme Court considered in its decision in Sims v. Apple, but the Court made clear in its plurality in Justice O'Connor's concurrence and Justice Breyer's dissent that it was not considering whether issue exhaustion just didn't apply at all in SSA proceedings, and quickly following on Sims, the First Circuit in Mills v. Apple, after Sims was decided, made clear that issue exhaustion does apply at SSA proceedings precisely because a contrary rule would wreak havoc on the administrative scheme because it would allow anybody to come into court as plaintiffs advocate as a categorical rule and raise for the first time any legal claim of error, even if it was never presented to the agency, when the agency could have had an opportunity to consider and provide a remedy or correct the procedures or consider the claim in the first instance. But you would advocate a different rule for representative parties as opposed to those who are not represented. Is that right? You're saying that this would apply to those whether they're represented or not? Yes, Your Honor. We believe that that's the correct rule. What I'm noting is that if you are concerned about the potential impact on pro se plaintiffs who aren't in this case, they were both represented, then the court can reserve that question. Counsel, why is the rationale that the Supreme Court applied in Sims not applicable here? What's the practical difference between the Appeals Council and the ALJ that would cause us to reach a different result? Sure. So the primary differences are the ones that Justice O'Connor identified in her concurrence, which is that Appeals Council review is discretionary. Nobody has an entitlement to it. You don't submit a brief in it. It's plenary review. The Appeals Council is supposed to be searching for any kind of errors in the case, and in the form that you have to request Appeals Council review, they provide three lines to potentially identify any issues. That's fundamentally different from an in-person hearing before the ALJ where you have the opportunity to testify, provide evidence, and raise any legal claims of error that you would like. As we noted in our reply brief, in Richardson v. Perales, a constitutional challenge to SSA procedures, right, the attorney in that SSA ALJ hearing raised a constitutional challenge almost 50 years ago. It's well understood that you have the ability to raise the claims that you want to, and these sorts of appointments clause claims were being raised across the country in different administrative proceedings. And what I was – yes, Your Honor. Counsel, so help me if I understand. So I read Sims. You agree we're controlled by Justice O'Connor's concurrence. Yes. Right? Justice O'Connor has applied the fifth vote, yes. Right. And she seems to say that the rationale for not applying an exhaustion requirement is there was no notice. That seems to be the central issue. She then goes on and says that's particularly the case for some other reasons, but her holding is that there was no notice. If I interpret her decision that way as only permitting an issue exhaustion requirement in an SSA proceeding where there is some notice, is there anywhere I could look to find that notice in your statutes, regulations, pamphlets, smoke signals, anywhere else? So I think if you – so I would answer in two ways. One, I don't think that you need to – I don't think that that's really the basis for Justice O'Connor's decision, so I'd explain why. But two, if you were to look for being on notice of the claims, I don't think that then you can say that those need to be manifest in a statute or regulation because otherwise that's changing the rule from one about whether anybody had notice to is issue exhaustion codified in a statute or regulation. And we know that that's not the rule, right? That you can forfeit claims even if there isn't a statutory or regulatory position for it. That's why I asked if it was in your pamphlet, right? Because it wouldn't need to be in a regulation if you put it on the form, right? So if you printed it in the pamphlet you handed to people, if the judge ALJ announced it when you walked in the room, so maybe – I'm just looking for some kind of notice. I get it doesn't have to be in the regulations, you know, but is there anywhere I would look? I mean, I tried to look at the forms and I just didn't find any place that I could suggest that there was any type of notice, statute, rule, regulation, pamphlet, announcement, anything. And I just want to make sure I'm right that if I read, and I understand your point about Justice O'Connor's opinion, but if I read O'Connor's opinion to require some kind of notice in this non-adjudicatory context, is there anything that you would point me to that provides that notice? Well, I'd point the court to the Tenth Circuit's decision in Carr that considered this issue, right? And there the court identified several SSA regulations where it says, you know, these are the regulations that say if you have objections or claims of error in the ALJ hearing, this is when you raise them, these are the time periods for them, et cetera. Now, we aren't arguing that those regulations impose an ex-issue exhaustion requirement by themselves, but I do think if you're looking for notice, that's the kind of notice you give. But again, I'd go back and contest the premise. I understand the premise. And one more, and I apologize, Judge Keenan, I don't mean to monopolize. So tell me why, when I look at 404.940, why I don't read the second sentence of that as imposing an issue exhaustion requirement. I understand you haven't argued that, and it might be waived. But as an officer of the court, why is that not an issue exhaustion requirement? We just haven't argued that that has been an issue exhaustion requirement. And I'm not here to say that if the court reads that on its face and believes that it imposes one, I'm not here to say that it doesn't. But we haven't made that argument here. What we're arguing is that the background rules that the Supreme Court explained in cases like L.A. Tucker, and, again, in Lucia, right, where the Supreme Court granted relief on an appointments clause claim, what the court said is that Mr. Lucia was entitled to relief because he, quote, timely raised that claim before the commission, in the agency, and then continued to pursue it on judicial review in the Court of Appeals in the Supreme Court. Plaintiff's rule is that everybody who has raised this claim in the district court is entitled to relief on it. And as we've described, that's potentially, you know, SSA adjudicates over 700,000 cases a year. And there are tens of thousands of cases that could go to court. Now, in most of these district court cases, the district courts applied the proper rule, which was issue exhaustion, which was you didn't raise this claim before the agency when the agency could have appointed the ALJs and given you a hearing before a constitutionally appointed officer. And, indeed, that's what the agency has done. There's no doubt that the commissioner possessed the power to grant relief on these kind of claims. And if they had been raised at the time, that's exactly what the Eighth Circuit noted, is that you would have had hundreds of these claims before the agency, and the agency could have done something about them rather than facing an administrative quagmire. But the agency has taken some action. So in terms of this so-called wrecking havoc argument here that you're making, what's happening in the Third and the Sixth Circuit? In the Third Circuit, a number of those cases had to be remanded. I think all of the cases where they were paying a written report. Hasn't Rick had it, and they're just not able to function at all in the Third and the Sixth Circuit? Your Honor, it's not just about those courts, right? The reason that a lot of these district courts reached the proper conclusion was because they had the proper rule. Because alternatively, if all of these district courts had decided, instead of issue exhaustion, that, no, you can raise this claim for the first time, then, yes, that would have been thousands of cases sent back to SSA. And the harm isn't to the agency, right? Because the agency has capacity to handle a volume of these cases. The harm is to the claimants who are waiting up to two years to have their first ALJ hearing. And a number of those, I'm certain, are entitled to benefits and would receive benefits when they get their ALJ hearing. The harm is to them. Let me go back to the Sims case. You brought up Sims as a case, Justice O'Connor's plurality opinion. That was a case in which the agencies, they had some level of expertise. You were talking about medical testimony. This is a constitutional claim. What gives the ALJ some specific authority to be able to address that appointments calls question? I mean, I don't understand that. Why should that be the case here? This case is somewhat different than Sims. It's not about the constitutional nature of the claim. But, again, this court in Nations Bank v. Herman decided that, too. But just to directly answer Your Honor's question, the agency doesn't have specialized expertise in constitutional claims writ large. But this is a constitutional claim saying that the commissioner of Social Security should appoint the ALJ. That is something that the commissioner can do and, indeed, has done. If those are the kind of claims that were presented to the agency, then the agency could address them and provide relief on those grounds. And that's exactly why it would further the interest of issue exhaustion and forfeiture because it's allowing the agency to address the claim of error in the first instance. And even if the agency doesn't do that, as the Supreme Court noted in L.A. Tucker, it's at least advising the agency that it's risking wholesale reversal on a number of claims. But, alternatively, when the agency's never done that. I got that point. But let me move along because you don't have a lot of time here. You've got two cases, one from the 10th and the 8th Circuit. It seems to go the other way on these things. And at least in so far as those cases, those are cases that cited a specific statute that required the claimants to object if they opposed these issues here. You don't have that in this case. And you don't have any type of notice that, arguably, I think Justice O'Connor is alluding to in Sims, that you've got to have at least some notice to the people. None of that happened here. And essentially you're talking pro se. You think we can carve out and say we're just going to address the represented ones today and then come back later on pro se. I'm not so sure I follow that because I think the rule here will go across the board. But the bottom line being is that at least in the 10th and 8th Circuit you did have a statute that required this objection. There's no such thing here. And there's no such notice of any type that's given to them for individuals who come before these. So why should we apply the same type of rules as the 10th and 8th Circuit instead of following the direction of the 3rd and the 6th Circuit on the cases that were done here? Well, in the 8th and the 10th Circuits, I think you might be citing NLRB versus RELCA locomotives and the Malouf or Energy West case. I was looking at Davis versus Saul in the 8th Circuit and Cobb versus Commissioners in the 10th Circuit. I don't know what circuit cases you're talking about. I'm sorry, those are cases from the same circuit that did involve statutes and regulations that oppose issue exhaustion. But in Davis and Carr, we're in the exact same bucket as we are here. It was the SSA context. It was disappointed claimants who were seeking relief on their disability claims. There was not a statute of regulation. And what the 8th and 10th Circuit explained in those cases is that is not the end-all, be-all. The background rule that we start from is one of issue exhaustion. And what we inquire under SIMS and under the other cases that the plaintiffs rely on is whether or not we should be creating an exception to that rule. And as those cases very ably described, we should not be creating an exception to that rule here. There's no basis for it. The agency can address the claim. The constitutional nature doesn't create an exception, which this court recognized in Nations Bank versus Herman. And I'd just like to note just because plaintiffs in their most recent 28-J letter citing the 6th Circuit's decision claim that we misread Nations Bank, that it was only dealing with the exhaustion of administrative remedies. But if you look at the last page of that decision, 430, it says there the plaintiff wants to raise a constitutional claim in the agency proceedings. And footnote 3 says, indeed, it has done so. It's raised that claim in the administrative proceedings. And then the court goes on to say, you have to exhaust your administrative remedies because the agency can grant you relief on your constitutional claim and might avoid having to seek judicial review in the first place. That's exactly the kind of logic that animates the general rule of issue exhaustion here. And we agree that SSA proceedings are non-adversarial and there's not a statute of regulation. But as the 8th and 10th Circuits have ably explained, that doesn't mean that you get to sandbag the agency and raise this issue for the first time in court. Okay, sir, thank you very much. Your time's expired. We'll hear from you on rebuttal. And right now, we'll hear from Ms. Hall. Thank you. May it please the court. The court held, the Supreme Court in Sims versus Apfel, that issue exhaustion in administrative proceedings is largely a creature of statute. We don't have a statute of regulation on point here, and it's been 20 years since Sims was handed down from the Supreme Court, and the agency has chosen not to issue an exhaustion regulation. Would you answer a preliminary question for me just before we get in the mix of things? How many cases are we talking about that this would affect? The agency puts forth this parade of horribles argument that there's hundreds of thousands of cases adjudicated, but really we may be looking at a couple of hundred. Most of the cases that could raise this, where there were ALJ decisions issued before July 16th of 2018, when these people were then properly appointed, those are now time-barred. You still have to file a civil action in court within 60 days of receiving a final decision from the commissioner. We really are not talking about thousands and thousands of cases. We're talking about maybe a couple hundred. It's a fraction of a fraction of the cases that the agency has to address each year, and it's not this great burden that the government characterizes it as. But going on with that, I would also like to address quickly a couple of points that were brought up. As you, Judge Wen, brought up regarding this making a different rule for represented versus unrepresented claimants, that's something that Justice O'Connor specifically cautioned against in Sims. That was not the road that the courts would want to go down because of the complexities in that, because of how it would have different rules for different people, and that it was something that courts should really try not to do. And regarding, Judge Richardson, the 940 regulation that was cited by the Tenth Circuit saying that, well, you have to object to an ALJ's constitutional authority, that regulation does not address that at all. Rather, that regulation says that if you have concerns about an ALJ having bias against the claimant, then the claimant should let us know. Wait a minute. You know, I want to understand that because I was going to come to this, but since you brought it. So it doesn't actually say that, right? So it has a prefatory sentence that talks about, you know, an ALJ can't have bias. And then there's a period, and then there's a second sentence that says, if you object to the ALJ that will decide, not limited by the first sentence, but if you object, you must notify them at your earliest opportunity, right? That second sentence doesn't strike me, contrary to your colleagues, you know, doesn't want to raise this, but that strikes me as saying you must raise an objection at the time. Why is that second sentence limited by the first, which is what I take your argument to be? I would say a couple of points about that. For one thing, they're setting the context that if you think the ALJ has some type of personal bias against you, you should let us know. But that's also something that can be addressed by the agency. If there's an ALJ that, say, personally knows the claimant or has some history, the claimant thinks they may be biased, then that is a remedy that the agency can give to the claimant. They can just assign a different ALJ. Well, but they also could, just as they subsequently did, the agency could reappoint in the proper manner all of the ALJs. I mean, we know, based on what ultimately ends up happening after Lucia, that the agency could remedy this appointments clause problem. And that's a point that I'd like to get to. It's notable that in November of 2017 that the government was arguing that its own SEC ALJs were inferior officers that were not properly appointed under the appointments clause. Social Security knew. The claimants didn't know, but Social Security knew that their ALJs were not properly appointed under the appointments clause. Yet they waited for eight months to do anything about it after the Supreme Court in Lucia and the Solicitor General forced their hand on the issue. They were even telling their own adjudicators, don't do anything about this, don't even entertain it. So they were aware of the litigation risk that was posed by this, but they chose to do nothing. And I think it's an important point to note here that the claimants in this case didn't have publicly available knowledge that these ALJs were not properly appointed until July of 2018, July 16th of 2018, when the commissioner said, I'm going to appoint these people as my own. Ms. Probst and Bradshaw then brought up the appointments clause objection in their August 7th, 2018 opening brief in federal court. There's not sandbagging going on here or the parade of horribles as the government characterizes it. That was their first opportunity to bring this up when they knew it. I want to go back to that. I just want to make sure I understand. The argument is that a lawyer could not have figured out that there was a potential appointments clause challenge until after Lucia? We didn't know how they were. We didn't know how to these challenges being made. I mean, this wasn't like an odd issue, right? I mean, we didn't know what Lucia was going to say. But I mean, I just want to go back to 940. I just want to make sure that you've given the arguments that you've got for why this doesn't impose an issue exhaustion requirement only on this narrow piece. I'm not talking about other issues. It only relates to, you know, an objection to the ALJ. It's like quite specific in requiring that issue to be raised at your earliest opportunity. Yeah. And I don't think that that can be divorced from the issue of bias. That is how that is prefaced. That is something, again, that could be addressed by the agency. And it's something that is set up that way. If you think there might be a bias, then you can object, and we can see if we can give you a different ALJ. There's nothing in there about constitutional structural challenges to the ALJ's authority. Let me ask you about the uptale of this. It does look like this particular regulation talking about this 4404, 940. It's talking about individual basis specifics. So if everybody is not properly appointed, who is he going to appoint? I don't know how that works out. If you did make the objection that you want another one, and they all are improperly appointed, there's literally no one else you can appoint. And that actually goes to the heart of the issue. When we're talking about bias, there's a remedy that's available for the claimant. But when we're talking about no one is properly appointed, it's futile. It's futility. And while the commissioner relied very heavily on the Elgin case in their briefing about how, well, even if it's a constitutional claim, even if it's futile, you still have to raise it, that case wasn't about administrative issue exhaustion. It was about remedy exhaustion. You can't just jump into federal court just because one of your contentions involves a constitutional claim. You actually have to go through ALJ and the AC. And that's not an issue here. Here, Ms. Probst and Bradshaw got final decisions from the commissioner before they filed their civil actions in court. And I would like to come back to that constitutional issue because when we don't have a statute of regulation on point, which has been conceded at the oral arguments in the district court and per briefing here, that there is not anything requiring issue exhaustion in statute of regulations, that you have to look at the nature of the claim. Contrary to what counsel is saying on the other side here, the Supreme Court noted in McCarthy v. Madigan that the nature of the claim is central to deciding whether or not issue exhaustion should be imposed. And I would also like to clarify that the claimants are not arguing for a broad ruling here that there is no issue exhaustion in ALJ hearings. We're just looking at the narrow issue of appointments clause challenges. And that's how we have to frame it because of the McCarthy situation. Let me understand where you're going with that. You point out the McCarthy case, and it does say that it is the nature of the claim. And that's what I brought up earlier with regard to the Sims case is the differentiation of a type of claim that was there was one in which there was an expertise noted that the agency had on medical testimony. No such exists here. Is that the kind of differentiation you're talking about when you talk about McCarthy's nature of the claim? Talking about it being constitutional versus something that is, yes. I think that goes both to the nature of the claim, something that the agency is competent to address, and also the governmental interest. We're balancing individual and government interests. Government interests are usually implicated with exhaustion when it comes to the ability to correct the error, but also the competence of the government to address it. And neither of those things are in favor of having issue exhaustion here. For a constitutional challenge, something that the ALJ is not an expert in, that's something that an Article III court needs to be looking at. And also, specifically in Matthews v. Eldredge, it's a case that doesn't get a lot of ink spilled on it from the government side. The Supreme Court said that a claimant in a Social Security hearing should not be expected to have to raise a constitutional challenge in that informal, non-adversarial setting. In fact, the Secretary wouldn't even be required to consider it, that while the person has to exhaust administrative remedies, they don't have to raise constitutional claims. There's other cases about that, Weinberger v. Salfi. How many of these claimants are pro se? I mean, when I'm thinking of Social Security claims, they come in all different kind of packages. You've got all kinds of disabilities, mental as well as others. As I recall, a number of them are not represented at all. And it's a non-adversarial proceedings. Really, they're kind of doing everything they can to help. It's all in the regulations right there that would get them qualified. What is the percentage of these cases that are not represented? It's approximately 30% have no representation. You then have other people, as you noted earlier, who have non-attorney representation. That's beyond the 30%. And then you have a fraction of that. Because you don't have to be a lawyer to represent someone on these cases. Exactly. Yes. Do you have to show some expertise to represent them at all? Or do you get Grandma to come along with you and she can get credit for it too? Well, individuals can come and talk on their behalf. But to represent them as a representative, they have to pass an examination form, or they don't have to go to law school or pass the bar or anything like that. As I recall, I think a paralegal for a lawyer can go in there and do it. As long as the lawyer oversees them and says do it. And they're signed off. These cases aren't meant to be those kind of cases where you go in, where you're back and forth in an adversarial situation. You've got people who are disabled or claiming disability of various types, and whatever is there. It could be mental disability. And yet to hold them to this standard, it seems to me, just doesn't follow. Maybe I'm wrong. Yes, sir. And the Third Circuit and Sixth Circuit noted that in their cases, that that's a really high individual burden to put on these claimants, many of which are unrepresented and have mental disabilities and have things that affect their ability to adequately represent themselves. And that to put the burden of being able to root out constitutional claims, some of which the ALJs aren't even able to address, it's too high a burden on the individual to have to do that. So in addition to the nature of the claim and these administrative proceedings being the informal, non-adversarial way that they are. And I'd like to come to another point to that regarding SEMS. We don't have a differentiation between the, while SEMS was restricted to Appeals Council issue exhaustion, pretty much all of the things that SEMS found were weighed against having issue exhaustion in Appeals Council proceedings do apply to ALJ proceedings. Particularly that form that Justice O'Connor noted in the plurality also referenced regarding how it doesn't appear that the agency relies little, if at all, on the claimants to identify issues. That same language that's in the form applies to me. Let me ask you about that as well, if you would. You know this process a lot better than I do. But as I read the regulations, 404-938 requires the ALJ to provide a notice of the issues that are going to be decided. And then 404-939 tells the claimant that if you object to the issues that are included on that notice, then you must notify the administrative law judge in writing no later than five days before the hearing. Right? And that looks different than the Appeals Council. I mean, that looks like you get a notice with a list of the things to be decided. I assume in your client's case that list did not include the constitutionality of the appointment of ALJ. And then 939 says if you think there are other issues, right, if you object to the issues to be decided, you must notify them in writing. So unlike the Appeals Council, this, now, I get maybe in your first argument, I'm sure is your opposing counsels waived this argument, and you may be right about that. But go to the merits, if you would, of why I don't view that as an exhaustion requirement, unlike in SIMS. Because it doesn't require you to raise additional issues. In fact, the regulations say we will tell you the issues to be decided, and the issues to be decided are if you have any objections to how the agency decided on your case at the initial and reconsideration levels. So how we already decided your case on your disability, there is no regulation requiring you to affirmatively raise issues. That regulation says that all of the issues that were adversely decided against you will be addressed, and we will provide you a notice of those issues. And if you object to the issues, meaning whatever the issues, you must file, you know, a writing within five days before. I mean, it doesn't, that 939 does not limit it to previously adjudicated decisions that aren't in your favor. It expands to all issues. It says if you object to those issues, issues like the onset of disability, the time period it's being looked at. It doesn't say those issues, right? It says if you object to, quote, the issues to be decided at the hearing. Right? It's not limited, right? That's, if you object to whatever the issues are to be decided at the hearing, you've got to object in writing. I mean, I understand the waiver argument, but why shouldn't I read that to say they send me a list. It doesn't say anything about appointments clause. I look at it and say I want to complain about appointments clause. I, quote, must notify the administrative law judge in writing that I want that issue addressed as well. My argument would be to look at both what the district court held below and also what the Third Circuit and Circo and the Sixth Circuit and Ramsey held, which is that if you read all those regulations together, it tells you that the claimant is told which issues are to be decided. You have to tell us if you object to those issues and do so in writing. But it does not say that you have to raise additional issues or that you have to put us on notice if there's something that's not already on this list. That's how other circuit courts have read that in Ramsey and Circo and also how the district court below noted. You're looking at disagreements with the issues below and will tell you the issues. And if you object to these issues, then you can do so. It does not require raising affirmative additional issues. Ms. Hall, then what you're saying is that the that directive goes to the issues that the agency has identified to be decided. Is that correct? Yes, ma'am. OK, and are you saying then that because of SIMS and the focus of SIMS on notice that there is no notice claimed in that? I mean, it seems to me that in a nutshell, that's your case. Yeah, there is no notice in that. And a lot of these regulations were in existence when the SIMS came out and the court noted that there is no issue exhaustion required for any of these issues before. So security, when we're not even looking at each particular level, they just don't have a statute of regulation on point. So a lot of these things were already in existence at that point. And the argument is that, yes, there's not a statute of regulation on point. And when we look at the factors under McCarthy versus Madigan, the nature of the claim is outside the agency's competence to handle. Again, Matthews versus Elders specifically noted that they don't have to raise those issues. Maybe I wasn't specific enough in my question. I guess the thing that is concerning me and is if the issue to be, if the issue to be decided, the issues to be decided are presented. Is that correct? I want to make sure I understand these proceedings adequately. The issues to be decided are communicated. Is that correct? Ms. Hall, would you just go ahead and proceed then? It looks like you're limited on your time. Yes, ma'am. I apologize about that connection issue. I'd like to come back to this issue about L.A. Tucker. It's a case that the agency relies upon very heavily. And that rationale was specifically rejected in SEMS with regard to Social Security proceedings. The court noted that in L.A. Tucker, even though there wasn't a statute of regulation on point, that was an adversarial proceeding for the Interstate Commerce Commission, unlike Social Security's proceedings, which are non-adversarial. So that case not only is not on point but was specifically rejected in the Social Security context. And I want to go back to the issue of the accumulating litigation risk. Social Security repeatedly notes that they want to be put on notice if they need to appeal. They were aware many, many months before they came about and appointed these people properly that they had an issue with the appointments of these people, even though the individuals did not have notice of that. I believe Judge Richardson noted that there were people raising these appointments clause challenges before that, but that was based on a suspicion that there might be an issue with their appointments. We did not have knowledge publicly until July of 2018 that there was even an issue here with the ALJ's appointments. The agency did not come out and acknowledge that those ALJs had not been properly appointed until July of 2018. And again, at the earliest opportunity, Ms. Probst and Ms. Bradshaw raised the issue in their opening briefs in federal court just three weeks later. But regardless, again, if we come back to the factors of noting, again, that the agency has admitted there's not a statute of regulation on point and that under McCarthy v. Madigan, the nature of the claim is one outside their expertise and the proceedings are informal, non-adversarial, involve the same language in their hearing notices that the appeals council requests involved for ALJs as well. And the government interest being low here, most of these claims are now time barred from being raised. There's not that many of them left. They're pretty much all of them are already in federal court. And the individual interest in having someone who's properly appointed, according to the Constitution, to protect that separation of powers issues, again, a harm is presumed here and the proper result is that these individuals have a remand of their case to a now properly appointed ALJ. And so I request that the court find, as the Third Circuit in Serco and the Sixth Circuit in Ramsey found, and find that it's just not appropriate for this type of claim and in this context to have judicially imposed issues. All right. Thank you very much. Counsel, rebuttal? Thank you, Your Honor. I'd like to start with the idea that this isn't within the agency's expertise to address, merely because it's a constitutional claim in nature. It's a claim that this particular officer, an ALJ, should be appointed by the department head, by the commissioner. That's something that the agency has the authority to do and that the agency did, in fact, did. And the challenge that an agency appoint a hearing examiner is the exact same kind of claim that was considered at L.A. Tucker, that the court said you have to raise that sort of claim. Now, plaintiff's counsel represents that L.A. Tucker is in an adversarial hearing, adversarial proceeding, and therefore SIMS explicitly rejects it. That's not the basis for the holding in SIMS. SIMS notes that it's non-adversarial, and the plurality goes on to note some additional concerns there. But Justice O'Connor's concurrence that supplies the fifth vote doesn't turn on the fact that it's non-adversarial. And, indeed, even the plurality notes it. Excuse me, but Justice O'Connor's opinion, getting us back to where we started with Judge Richardson's question, Justice O'Connor's opinion pretty much turns on the issue of notice, doesn't it? I think, again, even if you're having notice, that's the background rule. It's the common law rule that applies to all agency proceedings, is that you have to raise claims that you wish to preserve on judicial review. But I think Justice O'Connor very carefully chose her language at page 113 where she said, I write separately because, in my view, the agency's failure to notify claimants of an issue exhaustion requirement, in this context, is a sufficient basis for our decision. She's being really clear that that's why she's writing separately. So why doesn't that end the inquiry here? Because I think the key part of that is in this context, right? The Appeals Council is acting as a plenary discretionary review body on which you have three lines to request review and identify whatever you would like them to especially consider. That's fundamentally different from an ALJ hearing where you're attending in person, live, with an attorney present, if you would like one, able to make any kind of claim or argument that you would like, and then, indeed, claimants can make. And if your claim is, I don't think that you can hear my case until the commissioner appoints you, if those kind of claims are raised in the administrative proceeding exactly as the Eighth Circuit noted in Davis, that's something that the agency is going to consider and ultimately, as the agency did, end up appointing all of these ALJs. And I think that goes to the question of whether or not the commissioner, before they appointed the ALJs, could have assigned it to an appointed ALJ. I think there may have been some ALJs who had been appointed by the commissioner of a – sorry, the Secretary of Health and Human Services back when SSA was a sub-agency of that department. But even now, it could have done what the agency did do, which was ratify the appointments of all existing ALJs. And plaintiff's counsel has noted that she believes that many of these claims might be time-barred simply by the lapse of time. There's two notes on that. There's one, it takes a long time for anything to proceed from an initial ALJ hearing to a judicially reviewable order. And, you know, that timeline is still potentially open. But more importantly, if you look at JA 131 to 32, that's a district court transcript from the Bradshaw case. There is plaintiff's counsel stating that she believes there may be additional deficiencies in the appointment of these ALJs and that potentially there could be further claims raised on this. So once you're considered to be an officer of the United States, there are other potential constitutional claims that could arise. And just the fact that there has been an initial appointment that's ratified, a ratification could be challenged. People could raise other additional claims on that. And a rule that says you don't have to raise any of those claims during the administrative proceeding, but instead may raise them on judicial review for the first time encourages people, as both the Eighth Circuit noted in Davis and the Tenth Circuit noted in Carr, to not raise those claims in the administrative proceeding, but instead to wait to see if they get a favorable or an unfavorable hearing. And if you get an unfavorable decision, then seek judicial review on that ground. And that's exactly the kind of thing that forfeiture and issue exhaustion seek to prevent. All right, sir, thank you very much. We'd like to thank both counsel for their careful presentations today and Ms. Hall for staying the course there while we got you back on the screen. We appreciate all the help you've given us in this case, and thank you very much for your good work. The court will stand in recess now for a few minutes while we take up our next case. This honorable court will take a brief recess.
judges: Barbara Milano Keenan, James A. Wynn Jr., Julius N. Richardson